**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FREDDIE MANUEL MAISONET, JR. | : | CIVIL ACTION |
| O/B/O A.M.M., | : | |
| Plaintiff | : | |
| v. | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of the | : | |
| Social Security Administration, | : | |
| Defendant | : | NO.  20-5847 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                     June 7, 2022

  Freddie Manuel Maisonet, Jr., on behalf of his daughter, A.M.M. ("Plaintiff"), seeks

judicial review, pursuant to 42 U.S.C. § 405(g), 1383(c)(3), of the final decision of the

Commissioner of the Social Security Administration ("the Commissioner") that denied her claim

for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  Plaintiff

filed a brief supporting her request for review, the Commissioner responded, and Plaintiff filed a

reply.  Accordingly, for the reasons set forth below, Plaintiff's Request for Review will be granted,

and Judgment will be entered in Plaintiff's favor and against Defendant.

**I.  PROCEDURAL HISTORY[1]**

  On September 30, 2016, when she was eleven years old, Plaintiff's father, Freddie Manuel

Maisonet, Jr., protectively applied for SSI on her behalf, alleging a disability with an onset date of

June 12, 2012. R. at 19.  This claim was initially denied on May 8, 2017.  *Id.*  On November 29,

2017, Mr. Maisonet protectively filed a second application for SSI on behalf of his daughter based

---

[1] This court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and
Statement of Issues in Support of Request for Review ("Pl.'s Br."), Defendant's Response to Request for Review of
Plaintiff ("Def.'s Resp."), Plaintiff's Reply Brief ("Pl.'s Reply"), and the administrative record ("R.").

upon disability, with an onset date of July 18, 2005.  *Id.*  This new claim, denied on March 28, 2018, was consolidated with the first and heard on appeal.  *Id.*

On July 18, 2019, Plaintiff, unrepresented by counsel, appeared before Administrative Law Judge Sharon Zanotto ("the ALJ"), for her administrative hearing.  *Id.*  On October 25, 2019, the ALJ, using the sequential evaluation process for disability,[2] issued an unfavorable decision. Plaintiff sought judicial review from this court on November 20, 2020, after the Appeals Council denied a request for review on September 17, 2020.  *Id.* at 1-5.  Both parties have consented to the undersigned's jurisdiction pursuant to 28 U.S.C. § 636(c).

## II.   FACTUAL BACKGROUND

A.   Personal History

Plaintiff, born on July 18, 2005, was fourteen years old at the time of the administrative hearing.  R. at 22, 42.  A minor, she has no past relevant work and resides with her father, stepmother, step-brother, and step-grandmother.  *Id.* at 9, 67-68.

B.   Testimony of Plaintiff, AMM

At the July 18, 2019 administrative hearing, Plaintiff testified that she had passed the eighth grade, *id.* at 46, and entered high school without repeating any prior grades.  *Id.* at 49.  Plaintiff stated that she attended a learning class to receive extra help in all her core school subjects.  *Id.* Plaintiff expressed her difficulty with spelling and completing in-class assignments. *Id.* at 55.  Mr.

---

[2]  The Social Security Regulations provide the following three-step sequential evaluation for determining whether child claimant is disabled:

  1.  If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2.  *See* 20 C.F.R. § 416.924(b).
  2.  If the claimant is found not to have a severe impairment, a finding of not disabled is directed. Otherwise proceed to Step 3.  *See* 20 C.F.R. § 416.924(c).
  3.  If the claimant's impairment meets, medically equals or functionally equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  Otherwise the claimant is not disabled.  *See* 20 C.F.R. § 416.924(d).

Maisonet and AMM's brother ensure that she completes her homework. *Id.* at 53. She believed that she attended class more than her peers. *Id.* at 50. Plaintiff testified she has friends. *Id.*

Plaintiff's father helps administer her medications and occasionally assists with brushing her hair and reminders to shower. *Id.* at 51, 62. However, she can shower herself, brush her teeth, dress, feed herself, complete household chores, and take care of the family dog. *Id.* at 50-52.

AMM has never been subject to any school discipline; however, she has received lunchtime detentions for not timely completing assignments. In addition, she had never been suspended from school or involved in a school fight. *Id.* at 50, 52-53, 59.

B.    Testimony of Plaintiff's Father, Freddie Manuel Maisonet Jr.

At the July 18, 2019 administrative hearing, Mr. Maisonet testified that Plaintiff's learning disabilities cause difficulty learning to count money, spell her last name, and remember her address and phone number. R. at 64. He stated that she frequently needs general reminders (e.g., close the refrigerator door) and more personal reminders, such as the importance of maintaining proper toilet and feminine hygiene. *Id.* at 65, 68-69. As regards Plaintiff's mental and physical development, Mr. Maisonet elaborated that she is four years behind mentally, based on a psychological evaluation, and believes she is also behind physically because "she's just lazy . . . [s]he don't want to do anything. Without me telling her, she doesn't want to do anything." *Id.* at 66. He attributes this to her depressive state, which has led her to express suicidal ideations on many occasions and engage in anti-social behavior. *Id.* at 66, 69-70. He often worries about Plaintiff's risk-taking behavior, such as climbing trees. *Id.* at 73. Mr. Maisonet notes that Attention Deficit Hyperactivity Disorder ("ADHD") medication has helped increase Plaintiff's engagement and attention span. *Id.* at 66. Involvement in art school has also helped Plaintiff ease her thoughts and acts of self-harm. *Id.* at 70-71.

Plaintiff's relationship with her biological mother is poor, and the quality of her relationships with other household family members varies. *Id.* at 68. Mr. Maisonet stated Plaintiff does not always fit in with peers, because her speech difficulties make it hard for others to understand her. *Id.* at 65. These speech problems have been evaluated and continue, despite Plaintiff receiving help from a speech teacher in elementary school. *Id.* Plaintiff has difficulty understanding appropriate social cues, and her tendency toward conflict aversion is often self-detrimental. *Id.* at 73-74. Plaintiff relates better to children younger than her and has difficulty asking older persons for help for fear of being teased or humiliated. *Id.* at 74-75.

Mr. Maisonet related that Plaintiff's academic performance is poor; she has barely passed each grade. *Id.* at 65. He testified that Plaintiff was on an Individualized Education Program (IEP) with mixed results. *Id.* at 67. She met some goals and performed well on the initial IEP, but poorly on a second IEP. *Id.* He attributes her performance difficulties to mental impairments. *Id.*

### III.   THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1. [Plaintiff] was born on July 18, 2005. Therefore, she was a school-age child on September 30, 2016, the date the application was filed, and is currently an adolescent (20 CF 416.926a(g)(2)).

2. [Plaintiff] has not engaged in substantial gainful activity since September 30, 2016, the application date (20 CFR 416.924(b) and 416.971 *et seq*.).

3. [Plaintiff] has the following severe impairments: attention deficit hyperactivity disorder, major depressive disorder and specific learning disability (20 CFR 416.924(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5.    [Plaintiff] does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6.    [Plaintiff] has not been disabled, as defined in the Social Security Act, since September 30, 2016, the date the application was filed (20 CFR 416.924(a)).

R. at 20, 22-23.

## IV.   DISCUSSION

A.    Standard of Review

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed if substantial evidence supports them.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229)).  While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance.  *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

Overall, this test is deferential to the ALJ.  *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  The court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo*, might have reached a different conclusion.  *Id.*  Indeed, the court may not undertake a *de novo* review of the Commissioner's decision by reweighing the record evidence itself.  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Monsour Med. Ctr.*, 806 F.2d at 1190-91.  Nor is the court permitted to "impose

[its] own factual determinations." *Chandler*, 667 F.3d at 359.  *See Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder.").  By contrast, the Commissioner's legal conclusions are subject to *de novo* review.  *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.      Review of the Administrative Law Judge's Decision

Applying the three-step sequential evaluation process for children, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act after the application date of September 30, 2016.  R. at 20.  This determination, per the ALJ, included reviewing the complete medical history, consistent with 20 C.F.R. § 416.912.  Plaintiff asserts that the ALJ's decision is unsupported by substantial evidence, because the ALJ's finding, that Plaintiff does not have marked limitations in attending and completing tasks, and acquiring and using information, is based on failing to evaluate and weigh properly the opinion evidence provided by: (1) consultative psychological examiner Karen Plowman, Psy.D.; (2) school nurse Kim Braun, RN; and (3) teacher Jessica Duvall. Pl.'s Br. at 4-5.  Defendant requests that this court affirm the ALJ's finding that Plaintiff is not disabled.  Def.'s Resp. at 2.

For the following reasons, this court agrees the ALJ failed to address and resolve adequately contradictory evidence in the record.  More specifically, the ALJ erred by insufficiently explaining her resolution of conflicting evidence in the domains of acquiring and using information, and attending and completing tasks.  Thus, this court will remand the case for further consideration by the Commissioner.

1.   The Standard for Child Disability Cases

To establish a disability under the Act, a claimant under the age of eighteen (18) must show a "medically determinable physical or mental impairment, which results in marked and severe

functional limitations which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

In establishing disability, the claimant must demonstrate: (i) she was not engaged in substantial gainful activity; (ii) she had a "severe" impairment or combination of impairments; and (iii) her impairment or combination of impairments met, medically equaled, or functionally equaled the severity of an impairment in the listings. 20 C.F.R. § 416.924(a).  If the claimant has an impairment or combination of impairments that causes marked and severe limitations of function that meet, medically equal, or functionally equal a listed impairment, the regulations direct a finding of disabled. *Id.* § 416.924(d).  The claimant bears the burden at each step. *Id.* § 416.924(a).

An impairment functionally equals listing level severity at step three if the claimant can show "marked" limitations in two of the six domains of functioning, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a); (d).  A "marked" limitation "interferes seriously" with the ability to initiate, sustain, or complete activities independently. 20 C.F.R. § 416.926a(e)(2)(i).  Such a limitation is "more than moderate" but "less than extreme." *Id.*  A limitation that is "extreme" interferes "very seriously" with the ability to initiate, sustain, or complete activities independently. 20 C.F.R. § 416.926a(e)(3).  An "extreme" limitation is "more than marked," but does not necessarily mean a total lack or loss of ability to function. 20 C.F.R. § 416.926a(e)(3)(i).

The six domains of functioning in which the child must demonstrate a marked or extreme limitation are: (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for yourself, and, (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).  The ALJ addressed these six domains and assigned less than marked limitations in the following four

categories based on statutory provisions: acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for yourself. R. at 27-30, 32-33. She found no limitations in the categories of moving and manipulating objects, and health and physical well-being. *Id.* at 31-32, 33-34. At issue, in this case, are two domains: (1) acquiring and using information;[3] and (2) attending and completing tasks.[4]

---

[3] Under the relevant Social Security regulations and rulings, the domain of acquiring and using information requires consideration of "how well [someone] acquire[s] or learn[s] information, and how well [someone] use[s] the information [he or she] has learned." 20 C.F.R. § 416.926a(g). Someone of Plaintiff's age should be able to use information learned both in academic assignments and in daily living situations. *Id.* § 416.926a(g)(2)(v)). The regulations provide that a school-age child (ages 6 to the attainment of age 12) should:

> be able to learn to read, write, and do math, and discuss history and science. [The child] will need to use these skills in academic situations to demonstrate what [he or she] [has] learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. . . . [The child] should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing [his or her] own ideas, and by understanding and responding to the opinions of others.

*Id.* § 416.926a(g)(2)(iv). For an adolescent-age child (age 12 to the attainment of age 18), the regulations provide that the child should:

> continue to demonstrate what [she] [has] learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments). [The child] should be able to use what [she] [has] learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation). [The child] should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas. [The child] should also learn to apply these skills in practical ways that will help [her] enter the workplace after [she] finish[es] school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer).

*Id.* § 416.926a(g)(2)(v).

Examples of limited functioning in the domain of acquiring and using information include a lack of "understanding of words about space, size, or time"; inability to "rhyme words or the sounds in words"; "difficulty recalling important things learned in school yesterday"; "difficulty solving mathematics questions or computing arithmetic answers" and speaking "in short, simple sentences and hav[ing] difficulty explaining what you mean." *Id.* § 416.926a(g)(3).

[4] Under the relevant Social Security regulations and rulings, the domain of attending and completing tasks considers a child's ability to focus and maintain attention and how well she can begin, carry through, and finish activities, including the mental pace at which she performs activities and the ease of changing activities. 20 C.F.R. § 416.926a(h); S.S.R. 09-4p, 2009 SSR LEXIS 4. Attending and completing tasks also refers to a child's ability to avoid impulsive thinking and her ability to prioritize competing tasks and manage her time. *Id.* The regulations provide that a school-age child (ages 6 to the attainment of age 12) should:

> be able to focus [her] attention in a variety of situations in order to follow directions, remember and organize [her] school materials, and complete classroom and homework assignments. [She] should

2.   <u>Although the ALJ Did Not Apply the Proper Regulation, the Error is Harmless</u>

Plaintiff argues that the ALJ applied the wrong regulation to Dr. Plowman's opinion, thereby constituting reversible legal error.  Pl.'s Br. at 6, 9.  While this court agrees the incorrect regulation was applied, the error was harmless, because, even under the correct regulation, Plaintiff's argument lacks merit.  Hence, no remand is required on this basis.

The ALJ stated she had "considered the medical opinions and prior administrative medical findings in accordance with 20 C.F.R. § 416.920(c) [sic]."  R. at 23.  That regulation governs claims filed on or after March 27, 2017.  *Id.*  For Plaintiff's claim, filed on September 30, 2016, the prior regulation 20 C.F.R. § 416.927 should have been applied, rather than the new one.  Nevertheless, the misapplication constitutes a harmless error because Plaintiff's argument fails even under the old regulation.

---

be able to concentrate on details and not make careless mistakes in [her] work (beyond what would be expected in other children [her] age who do not have impairments).  [She] should be able to change [her] activities or routines without distracting [herself] or others, and stay on task in place when appropriate.  [She] should be able to sustain [her] attention well enough to participate in group sports, read by [herself], and complete family chores.  [She] should be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

*Id.* § 416.926a(h)(2)(iv).  For an adolescent-age child (age 12 to the attainment of age 18), the regulations provide that the child should:

be able to pay attention to increasingly longer presentations and discussions, maintain [her] concentration while reading textbooks, and independently plan and complete long-range academic projects.  [She] should also be able to organize [her] materials and to plan [her] time in order to complete school tasks and assignments.  In anticipation of entering the workplace, [she] should be able to maintain [her] attention on a task for extended periods of time, and not be unduly distracted by [her] peers or unduly distracting to them in a school or work setting.

*Id.* § 416.926a(h)(2)(v).

Examples of limited functioning in attending and completing tasks that an ALJ may consider in determining whether a plaintiff has a "marked" limitation include: being easily startled, distracted, or overreactive to touch, movements, sounds, or sights; being slow to focus on or failing to complete activities of interest such as games or art projects; frequently becoming sidetracked from activities or frequently interrupting others; giving up on tasks; and requiring extra supervision to stay engaged in an activity.  *See id.* § 416.926a(h)(3).  However, a plaintiff exhibiting any of these examples will not necessarily be designated as having a "marked" or "extreme" limitation.  *Id.*  The regulations require an ALJ to "consider all of the relevant information in [a plaintiff's] case record" when determining whether the plaintiff has a marked or extreme limitation in the domain of attending and completing tasks.  *Id.*

Under the relevant prior regulation and ruling, a treating source's medical opinion regarding the nature and severity of an individual's impairments, was entitled to controlling weight, only if it was well-supported by medically acceptable clinical and laboratory diagnostic techniques, and not inconsistent with other substantial evidence in the record.  20 C.F.R. § 416.927; S.S.R. 96- 2p, 1996 SSR LEXIS 9 (July 2, 1996).   Plaintiff seems to argue that, because consultative psychological examiner, Dr. Plowman's report supports a finding of at least marked limitations in the acquiring and using information, and the attending and completing tasks domains, under the "old regulations," her opinion should have been entitled to controlling weight.  Pl.'s Br. at 6, 9.  While Plaintiff is correct that "consultative examiners" are medical sources under S.S.R. 96-6p, they are not treating sources whose opinions were previously entitled to controlling weight.  *Compare* S.S.R. 96-6p n.1 (stating that both "consultative examiners" and "treating sources" fall under the definition of "medical sources"), *with* § 416.927(a)(2) (stating that a "treating source" has provided ongoing treatment and whose relationship is not solely based on the need for a supporting disability claim report).

An error is generally "harmless" when, despite the technical correctness of a plaintiff's legal contention, there nonetheless remains "no set of facts" supporting entitlement to benefits. *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) (quoting *Renchenski v. Williams*, 622 F.3d 315, 341 (3d Cir. 2010).  Stated differently, "remand is not required . . . [if] it would not affect the outcome of the case."  *Rutherford*, 399 F.3d at 553.  "The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *see Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016) (non-precedential) (citing *Shinseki*, 556 U.S. at 409) (stating a plaintiff must cite specific evidence demonstrating her claimed error caused harm).

While Plaintiff is correct that the former regulation should have been applied generally, she is incorrect that the prior regulation and associated ruling applied to the medical source at issue. Moreover, the ALJ's decision to assign persuasive, rather than controlling, weight to Dr. Plowman's report is consistent with the old regulation. Thus, even if the ALJ had applied the correct regulation, the outcome of Plaintiff's contention, that the ALJ should have treated Dr. Plowman's report as controlling, would remain incorrect. Accordingly, this error is an insufficient basis for remand.

3. The ALJ Erred in Determining That Plaintiff Did Not Have Marked Limitations in the Domains of Acquiring and Using Information, and Attending and Completing Tasks

In evaluating the ALJ's findings, the court remains mindful that it is not the court's place to weigh the evidence. The court may only determine whether substantial evidence supported the ALJ's decision. *See* 42 U.S.C. § 405(g); *see also Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Rutherford*, 399 F.3d at 554 (stating that courts may not weigh the evidence or substitute their own factual findings in reviewing the ALJ's decision). Based on this standard of review, this court does not reach a decision on whether the weight of the evidence supports a contrary finding to that of the ALJ. Rather, this court will remand because the ALJ committed legal error by not reviewing the evidence comprehensively. *See Wright v. Sullivan*, 900 F.2d 675 (3d Cir. 1990) (noting the scope of review on legal matters is plenary). By considering the opinion evidence in a piecemeal fashion, she improperly discounted favorable evidence to Plaintiff, while overstating other evidence supporting the decision she reached.

a. Acquiring and Using Information

The ALJ, Plaintiff claims, erred in weighing the opinion evidence provided by Dr. Plowman, Ms. Duvall, and Nurse Braun, and, consequently, improperly determined Plaintiff did not exhibit marked limitations in the acquiring and using information domain. Pl.'s Br. at 3.

11

First, Plaintiff argues that the examination Dr. Plowman conducted supports a marked limitation in the acquiring and using information domain because:

> Plaintiff's expressive and receptive language skills appeared to be below age expectations. Dr. Plowman found [Plaintiff]'s recent and remote memory skills slightly impaired and cognitive function below average. [She] noted [Plaintiff]'s style of responding was inconsistent, varying between careful and careless. [She] found [Plaintiff]'s fluid reasoning percentile in the 4th percentile, placing [Plaintiff] in the very low range, and her working memory was in the 2nd percentile, placing her in the extremely low range of functioning. [She] found [Plaintiff]'s processing speed in the 9th percentile, placing [Plaintiff] in the very low range and low average range, and her full scale IQ was in the 9th percentile, placing her in the very low and low average ranges. Her grade equivalents were also found low: word reading (3.0); sentence comprehension (2.8); spelling (2.4); and math computation (2.4). Plaintiff was continued on an IEP in seventh grade. It was indicated she spent only 60 percent of the day in a regular classroom.

*Id.* at 11 (citing R. at 282, 298, 398-400).

Next, Plaintiff argues that Ms. Duvall's opinion supports a marked limitation in the acquiring and using information domain, because she opined that Plaintiff has:

> a serious problem with respect to reading and comprehending written material; comprehending and doing math problems; providing organized oral explanations and adequate descriptions; learning new material; and recalling and applying previously learned material. . . . [and] obvious problems in understanding school and content vocabulary; expressing ideas in written form; and in applying problem solving skills in class discussions.

*Id.* at 8 (citing R. at 319).

Finally, Plaintiff argues Nurse Braun provided opinion evidence also supporting a marked limitation in the acquiring and using information domain, because she opined Plaintiff has:

> serious problems . . . understanding school and content vocabulary; providing organized oral explanations and adequate descriptions; expressing ideas in written form; recalling and applying previously learned material; and applying problem solving skills in class discussions. [She has] obvious problems in: comprehending oral instructions; reading and comprehending written material; comprehending and doing math problems; understanding and participating in class discussions; and learning new material.

Pl.'s Br. at 9-10 (citing R. at 216).

The ALJ found Dr. Plowman's April 2017 opinion "persuasive" that Plaintiff has a marked limitation in the acquiring and using information domain.  R. 27.  As the ALJ noted, the report is persuasive because supporting it is other evidence of Plaintiff's "need for a learning support, the IQ testing in April 2017 showing very low/low average range full scale IQ."  *Id.*  The ALJ also deemed Ms. Duvall's March 2018 report, noting serious problems in the acquiring and using information domain and her below grade average performance, "generally persuasive" and "well-reasoned and supported by the need for a learning support, the IQ testing in April 2017 showing very low/low average range full scale IQ."  *Id.* at 26.  The ALJ, however, reasoned that Nurse Braun's failure to consider medical and school records after February 2017—which documented "dramatic improvement in her grades and improvement in attention with medication," *id.* (citing Exhibit 6F/5, 12, 29)—ultimately suggested that "she is not as limited in the areas of acquiring and using information."  *Id.*

Although the ALJ considered other evidence about Plaintiff's learning support program and IQ as bolstering the persuasiveness of Dr. Plowman and Ms. Duvall's opinion evidence, it remains unclear why the same evidence was not applied to the opinion evidence supplied by Nurse Braun.  Furthermore, both the opinion evidence provided by Dr. Plowman and Ms. Duvall would seemingly also be consistent with the evidence provided by Nurse Braun.  Since the ALJ selectively considered the opinion evidence, rather than comprehensively addressed it, her reasoning for finding some evidence persuasive, and other evidence of limited persuasive value, such as that provided by Nurse Braun, was inconsistent.[5]  *See Benton for Benton v. Bowen*, 820

---

[5] Dr. Plowman's observations and those of Nurse Braun are additionally supported by state agency psychologist Dr. Jonathan Rightmyer, who opined that Plaintiff has a marked limitation in acquiring and using information.  R. at 27.  Yet, again, the ALJ cited Plaintiff's medication regimen and improved grades for discounting the opinion evidence of Dr. Rightmyer.  Beneficial to the court would have been acknowledging that other opinion evidence also supported Nurse Braun's conclusions, rather than summarily dismissing her evidence because of a noted improvement in Plaintiff's grades with medication.  Such an implicit rejection, without further discussion, is error.  *Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981).

F.2d 85, 88 (3d Cir. 1987) ("Where the [ALJ] is faced with conflicting evidence, [s]he must adequately explain in the record [her] reasons for rejecting or discrediting competent evidence."). Consequently, the ALJ's decision to give "limited" persuasive weight to Nurse Braun's opinion is unsupported by substantial evidence in the record.  As such, in the context of the remand, the ALJ is directed to consider whether the evaluation of Ms. Duvall's teacher questionnaire and Dr. Plowman's report impact her assessment of Nurse Braun's report.

        b.   <u>Attending and Completing Tasks</u>

Plaintiff argues that the ALJ erred in weighing the opinion evidence provided by Dr. Plowman, Ms. Duvall, and Nurse Braun, and, consequently, improperly found Plaintiff did not have a marked limitation in the attending and completing tasks domain.  Pl.'s Br. at 3.

First, Plaintiff argues that Dr. Plowman's evaluation supports a finding of a marked limitation in attending and completing tasks.  Plaintiff points to Dr. Plowman's notes documenting high inattentiveness and easy distractibility, as comporting with a marked limitation in attending and completing tasks.  *Id.* at 15.  Plaintiff alleges that the ALJ's failure to reconcile those notes with her finding of a less than marked limitation in the attending and completing tasks domain was error.  *Id.*  Specifically, Plaintiff says Dr. Plowman's opinions concerning Plaintiff's hyperactivity, impulsivity, fidgetiness, and disorganization easily equaled a marked limitation in the attending and completing tasks domain.  *Id.* (citing R. 403).

Next, Plaintiff argues that Ms. Duvall's teacher questionnaire supports a finding for a marked limitation in attending and completing tasks, because even though she "opined only obvious limitations in this domain," she based her opinion on Plaintiff "being in a 13/1 student/teacher ratio in learning support for her core subjects."  Pl.'s Br. at 16.  Plaintiff argues

that when Plaintiff is compared to the "'whole child,'[6] obvious problems in special needs classes could equate to more significant problems in regular classes." *Id.* (citing S.S.R. 09-1p).

Finally, Plaintiff argues that Nurse Braun's statements in her assessment support a marked limitation in the attending and completing tasks domain. Pl.'s Br. at 15. This is because, based on her "significant contact with [Plaintiff]," she opined that Plaintiff has a "very serious problem working without distracting herself or others and in working at a reasonable pace/finishing on time." *Id.* Nurse Braun also opines that Plaintiff has serious problems in the following areas:

> focusing long enough to finish an assigned activity or task; and in organizing her own things or school material. [She] also found obvious problems in refocusing to task when necessary; carrying out single-step instructions; carrying out multi-step instructions; completing class/homework assignments; and completing work accurately without careless mistakes. She supported her statement saying "student frequently is playing with any item around her. Needs multiple prompts to refocus . . . . She works at a slow pace . . . ".

*Id.* at 15-16 (citing R. at 217).

The ALJ stated in her decision that she found Dr. Plowman's report to be persuasive, because it is supported by other evidence of Plaintiff's "impairment in attention/concentration on mental status examination, her history of inattention and hyperactivity," but cites "significant improvement . . . with medication" of Plaintiff's grades and not repeating a grade as the primary reason for finding a less than marked limitation. R. at 27.

The ALJ stated in her decision that she found Ms. Duvall's report "generally persuasive" as to the obvious problems related to attending and completing tasks, because it is "supported by

---

[6] S.S.R. 09-1p, 2009 SSR LEXIS 1 describes the Social Security Administration's "whole child" approach, which incorporates "the interactive and cumulative effects of the [child's] impairments" and "starts with a consideration of [the child's] actual functioning in all settings." S.S.R. 09-1p, 2009 SSR LEXIS 1 (Feb. 17, 2009). The "whole child" approach requires the ALJ to determine "how the child functions every day and, in all settings, compared to other children the same age . . . [without] impairments." *Id.* The extent to which a child independently performs activities is one factor in determining how that child functions. *Id.*

her need for a learning support, . . . [her] impairment in attention/concentration on mental status examination, [and] her history of inattention and hyperactivity." *Id.* at 26.

The ALJ concluded that the questionnaire by Nurse Braun, completed on February 1, 2017, had limited persuasive value and was insufficient to support finding a marked limitation in the attending and completing tasks domain. *Id.* at 26. The ALJ reasoned that the report's failure to consider medical and school records after February 2017 documenting "dramatic improvement in her grades and improvement in attention with medication," *id.* (citing (Exhibit 6F/5, 12, 29), ultimately suggested that "[Plaintiff] is not as limited in the areas of . . . attending and completing tasks." *Id.*

Dr. Plowman's opinion in this domain illustrates how the ALJ could have more consistently shown how she weighed the evidence if she had considered the evidence comprehensively. For example, Dr. Plowman's report could be construed to support either a marked limitation, or a less than marked limitation, in the attending and completing tasks domain. On the one hand, her statements specifically addressing this domain rely on the reported information,[7] and would appear to support a marked limitation, as Plaintiff argued. On the other hand, however, her mental status examination "find[ing] that [Plaintiff] has limitations in [attending and completing tasks]" as the ALJ noted, and that her attention and concentration appeared "grossly intact" and "largely good," would nonetheless tend to support a less than marked limitation in this domain.[8] *Id.* at 27, 398-99.

---

[7] Dr. Plowman's report first details Plaintiff's current functioning in which Mr. Maisonet relayed to her a history of Plaintiff experiencing high inattentiveness, distractibility, hyperactivity, impulsivity, fidgetiness, and disorganization." R. at 396-97, 402.

[8] According to Dr. Plowman, Plaintiff's thought processes were "coherent and goal directed," she "recalled and understood instructions as given to her," but she "worked impulsively and needed to be reminded to consider her options before selecting one." *Id.* at 398. Dr. Plowman's overall prognosis of Plaintiff was "fair, given current functioning." *Id.* at 401.

At the time of Dr. Plowman's examination on April 27, 2017, Plaintiff was "not being treated for any mental health or behavior problems." *Id.* at 395, 401.   Nonetheless, he opined that "[s]he may benefit from psychiatric medications, especially to assist controlling the ADHD symptoms." *Id.*   After Dr. Plowman's examination, Plaintiff, on January 9, 2018, was first prescribed Citalopram for depression. *Id.* at 24, 346.  Plaintiff was later prescribed Concerta on January 19, 2018; Methylphenidate was prescribed, on October 25, 2018, for ADHD. *Id.*   The ALJ notes Plaintiff's academic improvement with medication, which is consistent with Dr. Plowman's prediction that Plaintiff would benefit from such medication.  However, the ALJ does not address how the additional opinion evidence of Ms. Duvall and Nurse Braun was also consistent with Dr. Plowman's report.

So, while the parts of Dr. Plowman's report that support a less than marked limitation are borne out by subsequent supporting evidence cited by the ALJ, other elements of her report could also be construed as supporting a marked limitation in the attending and completing tasks domain. However, it is not merely the fact that there is "the possibility of drawing two inconsistent conclusions from the elements," which per se would not preclude a finding that substantial evidence supported the ALJ's decision.  *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  Rather, it is that here, she has not fully considered the entirety of Dr. Plowman's report; specifically, its supportability and consistency, with other evidence that buttresses Plaintiff's claims.[9]   *See* 20 C.F.R. § 404.1527(c)(3)-(c)(4) (stating that when discussing her finding of whether an opinion is persuasive, the ALJ must explain how she considered its supportability and

---

[9]  Throughout the ALJ's decision, she "must give a reasoned explanation for [her] decision, including how [s]he factored in evidence that arguably pointed to the opposite conclusion."  *Morrison ex re. Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x. 186, 187 (3d Cir. 2008) (non-precedential) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000).

consistency).  Upon remand, the ALJ is directed to do so in accordance with the proper Social Security regulations and rulings governing this case.

4.  The ALJ Erred By Not Comprehensively Considering the Evidence Provided By Ms. Duvall and the Record Evidence She Cited of Plaintiff's Academic Improvement

This court is unclear about the precise weight assigned to Ms. Duvall's opinion evidence, because, unlike her review of Dr. Plowman and Nurse Braun's opinion evidence (as well as elsewhere in her opinion, reviewed opinion evidence from Dr. Rightmyer), the ALJ does not explicitly reference Plaintiff's academic improvement with medication when discussing Ms. Duvall's opinion evidence.  To the extent that the ALJ found Ms. Duvall's opinion evidence "generally persuasive," rather than categorically "persuasive," as she found Dr. Plowman's opinion, this court believes the ALJ's analysis of Ms. Duvall's opinion to be unacceptably cursory. It is, therefore, inadequate to support her decision that Plaintiff has less than marked limitations in the acquiring and using information, and the attending and completing tasks domains.

The ALJ is "not require[d] . . . to use particular language or adhere to a particular format in conducting [her] analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  However, an inadequate discussion, which leaves a court to speculate on what evidence led the ALJ to the decision's conclusions, precludes any meaningful judicial review.  *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000); *Kephart v. Richardson*, 505 F.2d 1085, 1090 (3d Cir. 1974) ("It is incumbent upon the [ALJ] to make specific findings—the court may not speculate as to [the ALJ's] findings.").

The ALJ repeatedly cited Plaintiff's academic improvement with medication, first prescribed in January 2018, for her justification in finding that Plaintiff had less than marked limitations in the acquiring and using information, and the attending and completing tasks domains.  However, Ms. Duvall's teacher questionnaire, dated March 2, 2018, still noted obvious

problems in attending and completing tasks, and serious problems in the attending and completing tasks domain.[10]  In fact, when Plaintiff was in Grade 6 in September 2016, her reading level was that of a third or fourth grader, her math level that of a fourth-grader, and her written language that of a second or third grader.  R. at 215.  At the time of Ms. Duvall's report, Plaintiff was in Grade 7 and still performing below grade level, despite receiving most of her instruction in a learning support classroom with a modified curriculum.  *Id.* at 319.  However, the ALJ does not engage this evidence in her reasoning, cited when discussing Dr. Plowman and Nurse Braun's opinions, that Plaintiff's grades improved "dramatically."  *See Benton*, 820 F.2d at 88.

Moreover, this court notes its skepticism of whether the ALJ reasonably characterized Plaintiff's academic improvement.  Even so, a more comprehensive discussion of the opinion evidence was warranted; by noting consistencies or inconsistencies among its opiners, rather than selectively examining the opinion evidence, and selectively applying a characterization of Plaintiff's academic improvement to only some of the opinion evidence.  *See Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("A single piece of evidence will not satisfy the substantiality test if the [ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence.").  Such a discussion would have reassured this court that the ALJ was not merely picking and choosing which evidence to accept, and which evidence to discount.  *See Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000) (stating an ALJ may not simply rely on "the pieces of the examination reports that supported [her] determination," while excluding other evidence)).

Finally, the ALJ stated that she, in accordance with 20 C.F.R. § 416.926a(b) and (c), and as explained in S.S.R. 09-1p:

---

[10] While the denotation of the questionnaire does not correspond directly to the Regulations, a marked problem must be "more than moderate" but "less than extreme"  20 C.F.R. § 416.926a(e)(2)(i).  The teacher questionnaire rates "obvious problems" as less serious than "severe problems," but more serious than "slight problems."  R. at 319.

> evaluated the 'whole child' in making findings regarding functional equivalence. I
> have first evaluated how the child functions in all settings and at all times, as
> compared to other children the same age who do not have impairments. I have also
> assessed the interactive and cumulative effects of all of the claimant's medically
> determinable impairment(s), including any impairments that are not "severe" in all of
> the affected domains. In evaluating the claimant's limitations, I have considered
> the type, extent, and frequency of help the claimant needs to function.

R. at 23. This court notes that when analyzing a child's improvements, it is insufficient to state

simply that treatments are benefiting a child. *See Brown v. Colvin*, 193 F. Supp. 3d 460, 466 (E.D.

Pa. 2016) ("A finding of 'less than marked' is unsupported by substantial evidence when the ALJ

fails to consider that the child's improvements in behavior occurred only in the structured

education special setting) (citation omitted). Rather, an ALJ must "compare the child's

functioning to same-age, unimpaired children, and consider the impact of structured or supportive

settings on the child's ability to sustain adequate functioning." *Id.* (citing 20 C.F.R. §

416.924a(b)(3), (b)(5)). Ms. Duvall's assessment is an important piece of evidence of Plaintiff's

relative functioning to other same-age, unimpaired children. *See* 20 C.F.R. § 416.913(d); *see*

*also* S.S.R. 09-02p, 2009 SSR LEXIS 2 (stating that evidence from non-medical sources, such as

teachers who know and have contact with the child, can be very important to understand the

severity of the child's impairment, and how it affects day-to-day functioning, and that the

Commissioner will consider such evidence). Therefore, this report warrants further consideration

and explanation as to the weight it is given, opposite the other evidence in the record that is

explicitly cited as supporting less than marked limitations in the acquiring and using information,

and the attending and completing tasks domains. It may very well be that the ALJ, upon further

considering Ms. Duvall's 2018 teacher questionnaire, in conjunction with a critical examination

of Plaintiff's academic improvement, will again conclude that Plaintiff does not have marked

limitations in the acquiring and using information, and the attending and completing tasks

domains.   That determination, however, is for the ALJ—not this court—to make in the first instance.

## V.   CONCLUSION

A thorough review of the relevant law and the record indicate that the ALJ erred when she failed to evaluate comprehensively, and explain properly, some of the record evidence relied upon in reaching her decision.   Accordingly, Plaintiff's Request for Review is granted.   An implementing Order and Order of Judgment follow.